# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:  )
        )    **JUDGE RICHARD L. SPEER**
Michele Masella )
        )    Case No. 06-33821
    Debtor(s) )
        )
        )
        )
        )
        )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Denied.

## FACTS

On December 29, 2006, the Debtor, Michele M. Masella (hereinafter the "Debtor"), filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). In her petition, the Debtor disclosed unsecured priority debt, consisting of three tax claims, in the amount of $1,510.11; and unsecured nonpriority debt, comprised primarily of consumer credit obligations, totaling $38,558.94. The Debtor also set forth in her petition $137,821.00 in secured claims.

The Debtor's primary unsecured creditor is Chase Bank, which is owed $28,728.00. The Debtor's secured obligations consists of a first and second mortgage against her residence and a

**In re Michele Masella**
**Case No. 06-33821**

security interest against a single item of personal property, her automobile. For the first and second mortgage, the Debtor's monthly obligation totals $1,230.00; for the automobile, the Debtor's monthly obligation is $283.09. According to the information provided by the Debtor, the amount owed on these items of secured property exceeds the properties' value. With regards to the disposition of the secured property, the Debtor stated that she intended to surrender her residence, but that she intended to reaffirm on her automobile.

The Debtor is presently employed as a director of customer relations and has been with the same employer for over 11 years. From her employment, the Debtor receives $3,368.73 in monthly compensation. After factoring in mandatory deductions, as well as a voluntary deduction of $80.38 for the repayment of a 401(k) loan, the Debtor nets $2,790.09 per month in employment income. In addition, the Debtor receives, from her former husband, $600.00 per month in alimony as well as monthly support payments for her two children, ages 19 and 15, totaling $828.61. Both of these supplemental payments, child support and alimony, will terminate in the next two to three years.

When added to her employment income, the supplemental payments received by the Debtor bring her net household income to $4,218.70 per month. Against this income, the Debtor set forth $4,152.03 in current monthly expenditures, thereby leaving her $66.67 per month in excess income. Among other things, the Debtor set forth that her expenses included: $100.00 for personal hygiene; $200.00 for auto maintenance; miscellaneous expenses of $150.00; and a vet expense of $50.00. The Debtor also factored into her expenses the costs, mortgages included, for the home she is surrendering.

## DISCUSSION

The United States Trustee (hereinafter "UST") brings its Motion to Dismiss under § 707(b)(1). This section provides that a court may dismiss a Chapter 7 case filed by an individual

Page 2

**In re Michele Masella**
**Case No. 06-33821**

debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." This paragraph was added to the Bankruptcy Code on October 17, 2005, with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act. A primary purpose of this Act, which is otherwise known as BAPCPA, was to curb perceived abuses within the bankruptcy process. *In re King*, 362 B.R. 226, 321 (Bankr. D.Md. 2007). In this effort, § 707(b)(1) made a number of substantive changes to its predecessor, § 707(b).

First, § 707(b)(1) makes the standard for dismissal less stringent; prior to BAPCPA, a case could only be dismissed for "substantial abuse," as opposed to now for simply "abuse." Congress also eliminated in BAPCPA what had otherwise been a safeguard for the debtor: under the former § 707(b) there existed a presumption in favor of allowing the debtor's case to proceed. *In re Haar*, 360 B.R. 759, 760 (Bankr. N.D.Ohio 2007). Now, in the absence of such a presumption, it would appear that the overall burden is on the debtor to show that he or she is entitled to Chapter 7 relief. *See* 29 AM JUR.2D *Evidence* § 158 (2006) ("the burdens of production and persuasion generally fall upon the party seeking a change in the status quo, or upon the party that asserts the claim.").

In addition to these changes, Congress also prescribed two alternative standards through which the existence of "abuse" is to be gauged for purposes of § 707(b)(1). First, in § 707(b)(2), Congress provided that, under a mechanical 'means test' formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) was added to the Code by BAPCPA to provide that, even if no presumption of abuse arises, a court could still dismiss a case based upon the particular circumstances of the case.

Page 3

In re Michele Masella
Case No. 06-33821

In its Motion to Dismiss, the UST, although it cited to both standards, limited its arguments at the Hearing to just that of § 707(b)(3).[1] In particular, the UST relied on the 'totality of the circumstances' test set forth in subparagraph (B) § 707(b)(3) which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

As a determination of dismissal under this provision directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

This Court has observed, as have others, that the 'totality of the circumstances' test under § 707(b)(3) is best understood as a codification of pre-BAPCPA case law.[2] Under pre-BAPCPA law,

---

[1] In citing to § 707(b)(2) as one of the grounds for dismissal, the UST took the position that, since the Debtor was surrendering his residence, he could not expense that property under the provision's 'means test' formula. (Doc. No. 21, at pg. 5). Previously, in the case of *In re Haar*, 360 B.R. 759 (Bankr. N.D.Ohio 2007), the UST presented this exact issue to the Court. The Court, however, squarely rejected the argument, holding that a debtor, who surrenders secured property, is not prohibited from expensing payments on that property in their 'means test' calculation. *Id.* at 768. As the *In re Haar* decision was issued prior to the UST's Motion to Dismiss in this matter, and since no additional arguments on this issue were made in its Motion, the Court, in a prior decision (*In re Stephen Zuccarell*, Case No. 07-30026) wherein the same argument was made, attached a copy of the *In re Haar* decision for the edification of the UST.

[2] In *In re Oot*, this Court stated that for "purposes of their application, the two grounds for

Page 4

**In re Michele Masella**
**Case No. 06-33821**

a case could be dismissed for abuse if it were found that there was a 'want of need' on the part of the debtor. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). In this matter, it is the overall position of the UST that the Debtor lacks the 'need' for bankruptcy relief because, upon making reasonable deductions to her living expenses, she has the ability to repay her unsecured debt. (Doc. No. 21, at pg. 6).

As argued by the UST, a debtor's ability (or lack thereof) to repay their unsecured debts is a prime consideration when determining whether a debtor has the requisite 'need' for Chapter 7 relief within the meaning of § 707(b)(3). The function served thereby is straightforward: Debtors who have the ability to pay their debts, should. As has been often stated in one form or the other: bankruptcy law is meant to provide a debtor with a 'fresh start' not a 'head start.' *See In re Beitzel*, 333 B.R. 84, 88 (Bankr.M.D.N.C.2005). ("Abuse of the Bankruptcy Code occurs under Section 707(b) when a debtor attempts to use the provisions of the Code to get a 'head start' rather than a 'fresh start.'").

A frequently utilized yardstick in determining whether a debtor has the ability to repay their debts is to ascertain the amount of 'disposable income' the debtor would have available in a hypothetical Chapter 13 case to repay his or her creditors. *Behlke v. Eisen (In re Behlke)*, 358 F.3d

---

dismissal under § 707(b)(3) are best understood as a codification of pre-BAPCPA case law, with there existing an abundance of reported cases wherein, prior to the passage of BAPCPA, courts dismissed Chapter 7 cases based upon both a debtor's 'bad faith' and where the 'totality of circumstances' revealed that the debtor was undeserving of Chapter 7 relief." — B.R. —, 2007 WL 1464488 (Bankr. N.D.Ohio 2007).

Other courts applying pre-BAPCPA case law to § 707(b)(3) include: *In re McGillis*, — B.R. —, 2007 WL 1549071 (Bankr. W.D.Mich. 2007); and *In re de Pellegrini*, — B.R. —, 2007 WL 1429037 (Bankr. S.D.Ohio 2007).

The seminal Sixth Circuit cases are: *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989), and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004).

Page 5

**In re Michele Masella**
**Case No. 06-33821**

429, 434-35 (6th Cir. 2004); *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). Disposable income is that term utilized by the Bankruptcy Code when determining, for purposes of Chapter 13 plan confirmation, the amount of income a debtor, when faced with an objection to his or her proposed plan of reorganization, must devote to the repayment of his or her debts. 11 U.S.C. § 1325(b)(1)(B). It is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

For its position, that the Debtor has sufficient disposable income available to repay her unsecured debts, the UST took issue with three categories of expenses claimed by the Debtor. First, based upon the fact that she is surrendering her residence, the UST put forth that the mortgage payments and other attendant expenses associated with the Debtor's real property are not properly included in her budget. Second, the UST argued that a $200.00 auto maintenance expense is not a reasonable necessity on a vehicle which is only four years old. Finally, according to the UST, the $150.00 miscellaneous expense included in the Debtor's budget is not a reasonably necessary expenditure because in its words, the "Debtor claims a monthly enumerated expense for just about every necessary living cost imaginable." (Doc. No. 21, at pg. 6).

With regards to its first point, concerning the surrender of her residence, the underlying position of the UST is correct. In a § 707(b)(3) 'needs' based analysis, a debtor is not ordinarily entitled to include payments due on property that is being surrendered. The reasoning for this is both logical and intuitive: under the 'totality of circumstance' test of § 707(b)(3), which is grounded in equity, it would be unfair to permit a debtor to sequester financial resources from his or her creditors based upon a nonexistent expenditure. And for this reason, this Court has previously held that income made available to a debtor when property is surrendered through the bankruptcy process may be considered when determining whether a debtor has the ability to repay their debts for purposes

Page 6

**In re Michele Masella**
**Case No. 06-33821**

of dismissal under § 707(b)(3).[3] *In re Robert/Sherrie Haar*, Case No. 06-31270, 2007 WL 1655498 *5 (2007).

It is recognized, as other debtors have pointed out, that this result does not mesh with the 'means test' calculation of § 707(b)(2). On point is this Court's decision in *In re Haar*, wherein it was held that, when calculating a debtor's ability to pay under the 'means test,' a debtor may deduct from their disposable income payments due on secured property that will not ultimately be retained. 360 B.R. 759 (Bankr. N.D.Ohio 2007). Yet, this does not create an unintended inconsistency. As this Court has also observed: The 'means test' formula of § 707(b)(2) is highly mechanistic; by comparison, the 'totality of circumstances' test of § 707(b)(3) is not mechanistic, being instead a test whereby a court is permitted to take into account any and all equitable factors bearing on a debtor's ability to repay their obligations. Sections 707(b)(2) and (b)(3) are thus entirely different in their application and scope, and thus what is of relevance for one section is not necessarily relevant for the other. *In re Wright*, — B.R. — , 2007 WL 895757, *2 (Bankr. N.D.Ohio 2007).

In this matter, therefore, when determining the Debtor's ability to pay, the Court will not allow the Debtor to expense the costs associated with the residence she is surrendering. To be sure, the Debtor will still need to allocate resources for her housing. Yet presumably the Debtor's postpetition housing allocations will not rise to equal that for which she was contractually required to pay at the time of her bankruptcy filing. Specifically, it can be assumed that the Debtor, who testified that she will now rent, will not need to allocate in her budget, as her two mortgage payments required, the sum of $1,230.00 for her monthly lease payments. Similarly, with the Debtor now

---

3

The converse can also be true; attempting to retain property, such as through the reaffirmation process, may also constitute an abuse when done to the detriment of the debtor's unsecured creditors. *In re Oot*, — B.R.— , 2007 WL 1464488 (Bankr. N.D.Ohio). In this respect, whether the debtor is retaining or surrendering property, the underlying focus is still the same: Does the debtor have the ability to repay his or her debts?

Page 7

**In re Michele Masella**
**Case No. 06-33821**

renting, those attendant costs – *e.g.*, taxes, insurances, repairs – associated with her surrendered property will no longer be required.

Even a minor savings experienced by the Debtor in her housing costs would be significant. The Debtor's unsecured obligations are relatively low, totaling $40,000.00. Additionally, any savings realized by the Debtor on her housing costs would result in a one-for-one increase in her disposable income as even with her former residence, the Debtor still had a slight surplus in her monthly budget. Furthermore, as it concerns this surplus, the Court, while it is not willing to go so far and adopt the position of the UST that other reductions to the Debtor's budget are necessary – *e.g.*, allocations the Debtor made for auto maintenance and miscellaneous expenses – the Court does agree that the Debtor's budget more than adequately accounts for her family's reasonably necessary needs.

Resultantly, even if the Debtor saved, for example, just $300.00 on her housing expenses, her disposable income would rise correspondingly, thereby resulting in a significant yield to her unsecured creditors. Taken over 60 months, the length of a Chapter 13 plan, $300.00 yields $18,000.00, or almost 50% of the Debtor's unsecured nonpriority obligations. As it regards her income, it also cannot be ignored that the Debtor, having worked for the same employer for over a decade, appears to have stable employment. *In re Krohn*, 886 F.2d at 126 (whether a debtor enjoys a stable source of future income is a potential factor when determining a debtor's ability to repay under § 707(b)).

For these reasons, the picture presented up to this point is one of a debtor who, with relative ease, is able to liquidate her unsecured debts. The Debtor has secure employment and, based upon changes made to her housing budget, the ratio of her unsecured debt to her disposable income is low. The Debtor, however, seeks to paint a different picture of her financial situation and her ability to pay, with her primary point centering on the termination of her support payments over the course of the next two to three years, thereby resulting in a significant decrease in her disposable income.

Page 8

**In re Michele Masella**
**Case No. 06-33821**

Since anticipated increases in a debtor's disposable income are considered when determining a debtor's 'need' and 'ability to pay' under § 707(b)(3), such as occurred in this case when secured property is surrendered, simple notions of consistency require that anticipated decreases in a debtor's income also be considered. And as it regards the factual basis underlying the position of the Debtor, the UST did not contest the fact that over the next two to three years, the Debtor will no longer be entitled to receive any support, both for herself and her children, from her former husband. These payments total $1,428.61 per month, $600.00 of which is for alimony and $828.61 of which is for child support.

But insofar as it concerns her inability to pay for purposes of § 707(b)(3), the Court is loath to give much weight to the termination of the Debtor's child support payments. The function served by child support is to provide for the child's needs until they are able to do so; child support payments also belong to the child, not the parent. *In re Estate of Antkowiak*, 95 Ohio App.3d 546, 552, 642 N.E.2d 1154 (Ohio App. 6th Dist. 1994). This is in contrast to alimony payments which Ohio law defines as transfers of income "both for sustenance and for support of the spouse or former spouse." O.R.C. § 3105.18(A).

It therefore can be safely assumed that when the Debtor stops receiving child support, she will no longer be required to provide financial support for her children, as the Debtor's children will have the ability to provide for themselves, thereby allowing a commensurate decrease in many of the Debtor's monthly expenses – *e.g.*, such as that for food. Ergo, when the Debtor stops receiving child support, her overall budget will not appreciably suffer as the decline to her income will more or less be equally offset by an equal decline in her monthly expenses. The Debtor, herself, acknowledged this when she explained that many of her miscellaneous expenses resulted from the needs of her two teenage daughters. This type of setoff, however, cannot be applied to the termination of the Debtor's alimony.

**In re Michele Masella**
**Case No. 06-33821**

Presently, the Debtor receives $600.00 per month in alimony. Exclusive of child support, this constitutes approximately 15% of the Debtor's gross monthly income of $3,368.73. The Debtor's monthly budget is therefore likely to experience a strain once her monthly alimony terminates.

On the central issue, whether she has the ability to repay her unsecured debts, this anticipated strain on the Debtor's monthly budget places this case on razor's edge. On the one side, as with her child support payments, there are possible methods by which the Debtor could offset the loss of her alimony income. As already discussed, the Debtor's housing budget has or soon will be trimmed. Additionally, the Debtor need not contribute $80.38 for the repayment of her 401(k) loan, a loan which is to herself. *In re Glenn*, 345 B.R. 831, 835 (Bankr. N.D.Ohio 2006) (401(k) contribution and loan repayments are not permissible deductions when determining an 'ability to pay' under § 707(b)'s needs-based analysis).

At the same time, it is questionable whether any of the savings realized by reductions in these two categories of expenses would allow the Debtor to make a meaningful repayment of her unsecured debts. While the Debtor undoubtably has some ability to save on her housing expenditures, – the Court earlier observed that a $300.00 per month savings was not unreasonable to assume – it does become a stretch to extend this amount appreciably above the $600.00 per month which the Debtor will lose when her alimony terminates. This would be needed because, as also mentioned earlier, the Debtor, at the time of her bankruptcy filing, had only a slight surplus in her monthly income. It would also appear unlikely that the income side of the Debtor's budget will improve. Although not much evidence on this particular point was presented, the evidence before the Court did tend to show that the Debtor, who is presently employed as a director of customer relations, has made a good faith effort to maximize her earning potential.

Given the edge on which this case sits, the Court, in giving weight to all the considerations discussed herein, finds that it is better to err on the side of the Debtor and allow this case to proceed.

Page 10

In re Michele Masella
Case No. 06-33821

In coming to this decision, a couple of things did not go unnoticed to the Court. First, the Debtor, in surrendering her home and lowering her housing expenses, appears to be making a good faith effort to get her finances under control, thereby positioning herself to take full advantage of the bankruptcy fresh-start. Second, the Debtor's most significant unsecured creditor, Chase Bank, who is owed $28,728.00 which comprises almost 75% of the Debtor's outstanding unsecured debt, will not likely be prejudiced by the Debtor's bankruptcy. The Debtor's former husband is the primary obligor on this account, and has the means by which to pay this debt, with the evidence showing that he earns between 70 and 90 thousand dollars per year.

Consequently, for all these reasons, the Court finds that the filing of this case by the Debtor did not constitute an abuse for purposes of § 707(b)(1) and § 707(b)(3). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1), be, and is hereby, DENIED.

Dated: July 20, 2007

/s/ Richard L. Speer
Richard L. Speer
United States
Bankruptcy Judge

Page 11

# **_CERTIFICATE OF SERVICE_**

Copies were mailed this 20th day of July, 2007, to the following parties:

Michele M. Masella
814 Askin St
Maumee, OH 43537

Elliot H Feit
520 Madison Ave
930 Spitzer Building
Toledo, OH 43604

Douglas A Dymarkowski
4747 Holland-Sylvania Rd
Sylvania, OH 43560

Office of the U.S. Trustee
U.S. Courthouse
201 Superior Ave, East
#441
Cleveland, OH 44114


/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court